**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 8:14-cv-01580-VMC-TBM |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY WEAVER, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER WITH INCORPORATED MEMORANDUM OF
LAW [CM/ECF 46] AND NON-PARTY MOTION FOR PROTECTIVE ORDER WITH
INCORPORATED MEMORANDUM OF LAW [CM/ECF 47]**

I.     **INTRODUCTION**

At issue is Defendant's request that the Court deny Plaintiff's pending motion to show

cause [CM/ECF 45], reconsider its July 23, 2015 Order compelling Defendant to make

arrangements to produce his hard drive by August 12, 2015 [CM/ECF 44], and enter a protective

order that (i) excuses Defendant from having to comply with the Court Order that he already

violated and (ii) approves of Defendant and his attorney's ongoing disregard of the applicable

Local Rules.  This extraordinary relief is procedurally unavailable pursuant to binding Eleventh

Circuit precedent and the Rules governing this Court, rules about which Defendant was

repeatedly notified.  *See* CM/ECF 15, 19, 21, 26, 32.  Defendant's newly-retained attorney's

attempt to undo the procedural history of the case by impugning Plaintiff and erroneously

representing her client's ignorance reeks of bad faith.  For the foregoing reasons, as explained

more fully below, Plaintiff respectfully requests this Court deny the Defendant's motions.

## II.    PERTINENT FACTS

1.    ***Defendant acknowledges his duty to raise timely objections***.    As Defendant notes, he "has, until now, been *pro se* throughout the litigation."   CM/ECF 46.    Given Defendant's *pro se* status, Judge Hernandez Covington held a lengthy telephone conference with the parties on April 16, 2015, during which time she thoroughly and meticulously explained to Defendant how this federal proceeding would work and advised him of his rights and responsibilities with regard to discovery, as well as his right to retain counsel.   *See* CM/ECF 32. During this telephone conference Judge Hernandez Covington emphasized that even if *pro se*, Defendant would be bound by all applicable court rules and would <u>need to timely raise any and all objections through discovery to avoid wasteful pretrial activities</u>.   *See id.*; *accord* Fed. R. Civ. P. 16(a).   Defendant acknowledged his obligations and was, on no fewer than four other occasions, expressly reminded in writing of his obligation to comply with all facets of the Federal Rules and the rules governing this Court.   *See* CM/ECF 15, 19, 21, 26.

2.    ***Defendant states that he has only one hard drive in his home (a 2008 MacBook Pro) and that no one besides him had access to that computer device.***   On April 27, 2015, Plaintiff propounded discovery requests upon Defendant, including a first set of interrogatories and a request for production.   *See* CM/ECF 37-1, 37-2.   Defendant failed to timely respond. After Plaintiff's numerous good faith efforts to elicit responses were unsuccessful, Plaintiff filed a motion to compel.   *See* CM/ECF 37.   On July 22, 2015, the day before the scheduled hearing on Plaintiff's Motion to Compel, Defendant finally sent Plaintiff his interrogatory responses.   *See* Defendant's Interrogatory Responses, attached hereto as an Exhibit.    In pertinent part, Defendant's interrogatory responses indicate that, for the preceding two years (between 2013 and 2015), (1) Defendant's wireless internet was always secured with a password; (2) the only hard

drive with access to his wireless internet was a 2008 MacBook Pro; and (3) no one besides Defendant had regular access to Defendant's home, to Defendant's wireless internet, or to Defendant's 2008 MacBook Pro.

3.     ***Defendant expressly waives objections to producing his 2008 MacBook Pro.*** The July 23, 2015 hearing on Plaintiff's Motion to Compel was focused on the production of Defendant's 2008 MacBook Pro—the instrumentality of Defendant's six-month infringement. Plaintiff's position is that it is virtually certain that this device contains evidence of BitTorrent use and Plaintiff's copyrighted works (or, in the alternative, evidence of spoliation or suppression of evidence).   Undersigned argued at the hearing that Defendant's failure to timely object to producing this key piece of evidence resulted in a waiver of his ability to do so.   Judge McCoun then expressly asked Defendant whether he had _any_ objections to producing his 2008 MacBook Pro for forensic imaging.   Defendant unequivocally told the Court and undersigned that he did not.  *See* CM/ECF 42, 44.

4.     ***The Court enters an order compelling Defendant to arrange for the production of his hard drive by August 12, 2015.***   Immediately after the hearing, a minute entry was entered on the docket memorializing what had occurred, stating: "_By Defendant's agreement_, imaging of hard drives presently in computer or any hard drive previously removed to be completed within 20 days.  Order to follow."   CM/ECF 42.   Judge McCoun entered an Order reaffirming this, stating: "By agreement of the Defendant, Plaintiff is permitted to access Defendant's computer hard drive(s) in order to copy or image the same.   Plaintiff's representative shall be permitted to access Defendant's computer in order to perform the copying.   Plaintiff and Defendant shall coordinate a mutually agreeable date and time – within twenty (20) days of this Order – to accomplish this task."   CM/ECF 44.   Although Defendant also failed to respond to Plaintiff's

other production requests, the production of Defendant's 2008 MacBook Pro was deemed a threshold issue likely to lead to relevant and potentially outcome dispositive evidence. Consequently, since the need for additional production could be mooted, Judge McCoun ordered that Defendant produce, and Plaintiff examine, Defendant's hard drive before Plaintiff's other production requests would be entertained.[1]

5. ***Defendant violates the Court Order and Plaintiff files a show cause motion.*** To comply with the Court Order, Plaintiff's counsel earnestly made diligent and repeated efforts to schedule a date and time to image Defendant's 2008 MacBook Pro. *See* CM/ECF 45, 51. The independent computer professional retained to image Defendant's hard drive also repeatedly reached out to Defendant to schedule the production. *See id.* On August 28, 2015, having exhausted all efforts to obtain Defendant's compliance and concerned about undue delays in the litigation, Plaintiff filed a show cause motion, asking the Court to enter an order directing Defendant to explain why he should not be sanctioned and held in contempt for his ongoing failure to produce his 2008 MacBook Pro as ordered. *See* CM/ECF 45.

6. ***Defendant arranges to produce his hard drive for imaging for September 4, 2015, but then, upon advice of counsel, calls off the production in violation of the Rules.*** On August 31, 2015, after receiving notice of the motion to show cause, Defendant emailed undersigned, asking why Plaintiff moved for contempt when Defendant was perfectly willing and able to produce his hard drive. *See* CM/ECF 51-1. Defendant reaffirmed that he had <u>no objection</u> to producing his hard drive and advised that he would, in fact, be producing same for imaging on Friday, September 4, 2015. *See id.* Undersigned explained that the Court would be

---

[1] *See* CM/ECF 44 ("Plaintiff is permitted to access Defendant's computer hard drive(s) in order to copy or image same. [N]o additional production will be required at this time. If, upon review of Defendant's hard drive(s), Plaintiff determines that additional requests are necessary, Plaintiff may serve such requests….").

notified of Defendant's compliance once his hard drive was imaged.  *See id.*  Defendant did not, however, follow through with the September 4, 2015 production.  Instead, Defendant, by and through newly-retained counsel, surreptitiously filed an untimely and procedurally deficient "Motion for Protective Order."  *See* CM/ECF 46.  Defendant's attorney also filed a similar motion on behalf of an unknown third party, who purports to be a woman with whom Defendant is either very recently married or otherwise long estranged.[2]  *See* CM/ECF 47.  After filing this motion, Defendant, by and through his attorney, refused to make arrangements to produce his hard drive, in express violation of not only this Court's July 23, 2015 Order, but also this Court's Local Rules on Discovery Practice.  *See Discovery Practice in the United States District Court Middle District of Florida* ("The mere filing of a motion for a protective order does **not**, absent an order of the Court granting the motion, excuse the moving party from complying with the requested or scheduled discovery.").

## III.   ARGUMENT

### A.  The Motions are Untimely and Not Properly Before the Court.

As a threshold matter, Defendant's motions for protective order are untimely and they are not properly before the Court.  Consequently, the Court may readily deny the motions as a procedural matter.

#### 1.  A motion for a protective order must be filed *prior* to the date the discovery material is to be produced.

A motion for a protective order must be filed ***prior*** to the date the discovery material is to

---

[2] Defendant's interrogatory responses, served on July 22, 2015, advised that (1) for the preceding two years (*i.e.*, between July 2013 and July 2015), his 2008 MacBook Pro was the only computer device in his home and Defendant is the only person identified as having used it and (2) during the period of recorded infringement (*i.e.*, between January and June of 2014), "Defendant had no one else residing or routinely visiting his home."  *See* Ex. attached hereto.  Consequently, this purported wife neither lived with or regularly visited Defendant between January and June of 2014, and she didn't access Defendant's computer between July 2013 and July 2015.

be produced.  *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 2:14-mc-25, 2014 WL 5810920, *1 (M.D. Fla. Nov. 7, 2014); *Laughon ex rel. Laughon v. Jacksonville Sheriff's Office*, No. 3:06-cv-692, 2007 WL 1247305, *2 (M.D. Fla. April 30, 2007); *Williams v. Am. Tel. & Tel. Co.*, 134 F.R.D. 302, 303–04 (M.D. Fla. 1991); *see also Discovery Practice in the United States District Court Middle District of Florida*.  Here, Plaintiff propounded its production requests on April 27, 2015, making Defendant's production due May 27, 2015.  *See* CM/ECF 37-2; Fed. R. Civ. P. 34(b)(2)(A).  Defendant failed to seek a protective order by this time.  Not only that, but Defendant did not seek a protective order during the pendency or resolution of Plaintiff's ensuing motion to compel.  *See* CM/ECF 37–44.  Instead, Defendant waited until September 1, 2015, ninety seven days after his production deadline, well *after* Defendant already violated the Court's order compelling production and *after* he was in contempt, facing a motion for sanctions.

Even if the Court were to allow Defendant to demonstrate "good cause" for his untimely filing, Defendant fails to do so.  According to Defendant, the reason he waited five months and until he was already in contempt to seek a protective order was because he had been representing himself *pro se*.  *See* CM/ECF 46.  This is decidedly not "good cause."  The Case Management and Scheduling Order, which Defendant signed off on, specifically states that "all parties (both represented and *pro se*) shall comply with this order, with the Federal Rules of Civil Procedure, with the Local Rules of the United States District Court for the Middle District of Florida, and with the Administrative Procedures for Case Management/Electronic Case filing."  CM/ECF 33, at p. 2–3.  Further, Defendant was advised not once, not twice, not three or four times, but at least five separate times of his duty to avoid undue pre-trial delays and comply with the Local and Federal Rules.  *See* CM/ECF 15, 19, 21, 26, 32.

That Defendant's newly-retained attorney has different legal strategies than those

Defendant utilized does not constitute "good cause" to allow Defendant to now retract the litigation and undo everything.  Allowing this to happen would frustrate the proper functioning of the judicial process in contravention of the Federal Rules since it would disregard the considerable amount of time and money that both Plaintiff and this Court have already invested in advancing this case through discovery.  *See* Fed. R. Civ. 1.  More than that, entertaining Defendant's untimely motion for a protective order on the basis that he was not previously represented would affront well-established Eleventh Circuit jurisprudence that mandates that "*pro se* litigants are subject to the Federal Rules of Civil Procedure, including sanctions for misconduct and for failure to comply with court orders."  *E.g.*, *Maus v. Ennis*, 513 F. App'x 872, 878 (11th Cir. 2013).[3]

### 2.  A request for reconsideration of a pretrial order must be filed within fourteen days of the order.

In his motions, Defendant does not—indeed, cannot—merely request the entry of a retroactive protective order.  This is because on July 23, 2015, the Court entered an Order compelling Defendant to make arrangements to produce his hard drive by August 12, 2015.  *See* CM/ECF 44.  Consequently, Defendant's motions effectively ask the Court to reconsider its July 23, 2015 order and to now give its imprimatur on Defendant's ongoing flagrant violations.  Defendant cannot now be heard to make this time-barred request.  The Federal Rules unambiguously state that motions for reconsideration of or relief from a pretrial order must be made, if at all, within fourteen days of the order's entry.  *See* Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 14 days after being served with a copy.  A party may

---

[3] The case law Defendant cites to hold otherwise is simply off point; those cases do <u>not</u> excuse defendants from timely participating in discovery or complying with court orders, they merely recognize that since non-lawyers are often unfamiliar with technical pleading requirements, unrepresented parties are afforded leniency in construing *pro se* pleadings.  *See* CM/ECF 46 at p. 3 (citing *Bolden v. Odum*, 695 F.2d 549, 550 (11th Cir. 1983), which cited *Haines v. Kerner*, 404 U.S. 519 (1972) for the point that "courts have shown leniency in <u>construing pleadings</u> filed by pro se litigants. … If a *pro se* complaint meets jurisdictional requirements, we can extend such leniency as justice requires in construing the pleadings filed by such a litigant.").

<u>not</u> assign as error a defect in the order not timely objected to."). To promote certainty and reliability, the Rule has generally been construed to preclude review of untimely raised objections. *See, e.g.*, *Nowia-Pahlavi v. Haverty Furniture Cos., Inc.*, No. 6:08-cv-36, 2009 WL 1393475, *6 (M.D. Fla. May 18, 2009) (declining to entertain a motion requesting protection and relief from a court order where same was untimely filed). Here, Defendant was required to object to or seek relief from the Court's Order on Plaintiff's Motion to Compel by August 6, 2015. *See* Fed. R. Civ. P. 72. Defendant's pending motions, filed on September 1, 2015, are therefore improper and untimely. *See id.*; *Nowia-Pahlavi*, 2009 WL 1393475 at *6.

   **B. Even if Construed as Timely Motions For Reconsideration of a Final Order, Defendant's Motions Improperly Rely Upon Waived Objections and Legal Arguments**

   Assuming, *arguendo*, that the Court construes Defendant's motions as timely motions for reconsideration of a final order under Rule 60, which it should do, Defendant is still not entitled to the relief he requests. Where a motion raises objections and legal arguments and asks the Court to reconsider and vacate a prior order based thereon, the movant must 'satisfy a high burden involving facts or law of a strongly convincing nature that would induce a court to reverse its prior decision.'" *Campero USA Corp. v. ADS Foodservice, LLC*, 916 F. Supp. 2d 1284, 1291 (S.D. Fla. 2012). Case law is clear that it is exceedingly rare for a party to meet this burden; this Court has repeatedly, and very recently, clarified that "in the interests of finality and conservation of scarce judicial resources, *reconsideration of a previous order is an extraordinary remedy to be employed sparingly*." *Wane v. Loan Corp.*, No. 8:11-cv-2126, 2015 WL 5021632, *4 (M.D. Fla. Aug. 25, 2015) (J., Hernandez Covington); *Canalejo v. ADG, LLC*, No. 8:14-cv-17, 2015 WL 4992000, *1 (M.D. Fla. Aug. 19, 2015) (same); *Gillis v. Deutsche Bank Trust Co.*, No.2:14-cv-418, 2015 WL 4937367, *1 (M.D. Fla. Aug. 18, 2015) (same); *Lamar Adver. Of*

*Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 489 (M.D. Fla. 1999) (same).  "The courts have delineated three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest injustice."  *Sussman v. Salem, Saxon & Nielsen, P.A.*, 153 F.R.D. 689, 694 (M.D. Fla. 1994).  Here, Defendant does not allege an intervening change in controlling law or the availability of new evidence.  Instead, Defendant asks the Court to consider never-before raised objections and legal authority, claiming that same indicates that the Court's prior Order, which Defendant continues to violate, is infected with clear error.

### 1.  Defendant's legal arguments and objections were waived

Defendant attempts to now, for the first time, raise a series of objections to and legal arguments against the production of his hard drive.  The Court need not address Defendant's erroneous legal argument that production of his hard drive is not supported by case law because it is black letter Eleventh Circuit law that "[m]otions for reconsideration should not be used to raise legal arguments which could and should have been made before."  *Sanderlin v. Seminole Tribe of Florida*, 243 F.3d 1282, 1292 (11th Cir. 2001); *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998) (same); *Comprehensive Care Corp. v. Katzman*, No. 8:09-cv-1375, 2011 WL 2119402, *2 (M.D. Fla. 2011) (same).  "Denial of a motion for reconsideration is especially sound when the party has failed to articulate any reason for the failure to raise the issue at an earlier stage in the litigation."  *Id.*

Defendant's privacy objections fare no better.  Defendant argues that he "used his computer to send email to and from his previous and current attorney," and that his hard drive contains unidentified "private medical information" about his wife.  *See* CM/ECF 46, 47.  It would appear, however, that these representations are disingenuous.  The claim that Defendant's

hard drive contains attorney-client privileged communications with a former attorney regarding this substantive litigation undermines the entire basis of Defendant's motion, which he claims to have filed only because he had "been *pro se* through the litigation."  CM/ECF 46 at p. 1.  And Defendant did not retain his current attorney until *after* he was in contempt of court and facing likely sanctions for failing to timely produce his hard drive.[4]

As for Defendant's purported wife, Defendant's discovery responses stated that he had no cohabitants or regular visitors between January and July of 2014, and Defendant identified only himself as having access to his hard drive for the preceding two years.  Therefore, assuming this wife truly exists, it would appear that she never used Defendant's hard drive and only came into the picture within the last two months, after Defendant filed his interrogatory responses.  The uncorroborated proposition that Defendant's hard drive contains sensitive information pertaining to his wife is thus similarly suspect.  Moreover, Defendant's purported wife, a non-party who has not obtained leave, <u>lacks standing</u> to raise untimely objections to the production of Defendant's hard drive because no discovery is sought from her.  *See* Fed. R. Civ. P. 26(c)(1) ("a party or any person *from whom discovery is sought* may move for a protective order in the court where the action is pending").

If necessary, the foregoing privacy concerns could easily be dealt with by the Court's entry of a fair confidentiality order that prohibits Plaintiff's expert's disclosure of any material deemed confidential.[5]  The privacy objections do not, however, entitle Defendant to a protective

---

[4] To the extent Defendant deliberately saved recent attorney-client documents on the hard drive he is under order to produce (rather than simply saving such documents in his email), Defendant's bad faith gamesmanship should not be rewarded.  It is patently absurd to suggest that a party may deliberately manufacture a barrier to complying with an unambiguous pre-existing court order by needlessly creating a basis for an already-waived privilege.

[5] To the best of undersigned's knowledge, Plaintiff, Defendant, and the Court all understood that Defendant's computer would likely contain a plethora of data unrelated to the instant lawsuit at the time Defendant was ordered to produce the drive for imaging.  Defendant never once objected to production of the drive claiming that it contained information he did not want turned over.  Regardless, neither Plaintiff nor Plaintiff's expert has any

order.  This is particularly true because Defendant already (1) *implicitly* waived any objections to producing his hard drive by failing to timely object to same and (2) thereafter repeatedly *explicitly* waived any objections to producing his hard drive.  As the record reflects, Defendant expressly advised Plaintiff and the Court that he had ***no objection*** to producing his hard drive.[6]

Defendant's newly-retained attorney's ability to resurrect waived objections and privileges is foreclosed by well-established law.  *See, e.g.*, *Jaffe v. Grant*, 793 F.2d 1182, 1190 n.6 (11th Cir. 1986) ("any privilege was waived by plaintiffs' failure to timely assert such privilege in response to defendant's discovery or even prior to the hearing on all pending discovery motions before the magistrate"); *Foster v. Coca-Cola Co.*, No. 6:14-cv-2102, 2015 WL 3486008, *2 (M.D. Fla. June 2, 2015) ("party that does not assert objections to discovery within the time permitted by rule, stipulation, or court order waves objections and is precluded from asserting objections in response to a motion to compel"); *Reliance Ins. Co. v. Core Carriers, Inc.*, No. 3:06-cv-585, 2008 WL 2414041, *2 (M.D. Fla. June 11, 2008) ("when a party fails to timely object to interrogatories, production requests, or other discovery efforts, the objections are deemed waived.  The waiver operates *even in situations where a party had a proper objection to a discovery request*."); *Third Party Verification, Inc. v. SignatureLink, Inc.*, No. 6:06-cv-415, 2007 WL 1288361, *3 (M.D. Fla. 2007) ("a party who fails to file timely

---

interest whatsoever in the other miscellaneous information that may be contained on the drive unrelated to this lawsuit.  Defendant cannot point to a single case in which Plaintiff or its expert improperly reviewed, disclosed, or even mentioned irrelevant personal information found on a hard drive that was produced for examination.  No such circumstance exists or has existed in any of the numerous lawsuits Plaintiff has filed nationwide.  Plaintiff's expert only examines hard drives for evidence of copyright infringement, BitTorrent use, evidence of spoliation, and evidence of hard drive suppression.  And this is all that gets reported to Plaintiff.

[6] *See* CM/ECF 42, 44 (noting that Defendant waived objections and voluntarily agreed to produce his hard drive); *see also* CM/ECF 51-1 (showing that, as recently as August 31, 2015, Defendant confirmed his intent and willingness to produce his hard drive).

objections waives all objections, *including those based on privilege or work product*").[7]

### 2. Judge McCoun did not abuse his discretion

Since Defendant agreed to produce his hard drive and explicitly waived objections to and legal arguments against the production, it cannot be suggested that Judge McCoun abused his discretion in ordering the agreed-upon production.   This too is fatal to Defendant's motions because a motion for reconsideration grounded on claims of clear error and manifest injustice "will only be granted to correct an abuse of discretion."  *U.S. v. Pease*, No. 8:98-cr-302, 2015 WL 5083247, *2 (M.D. Fla. Aug. 27, 2015); *Bankers Life Ins. Co. v. Credit Suisse First Boston Corp.*, No. 8:07-cv-00690, 2008 WL 4372847, *1 (M.D. Fla. Sept. 24, 2008) (same).

### C.  Defendant's Legal Arguments are Meritless and Inapposite

Defendant's motions for protective order should be denied even if the Court chooses to consider the merits of Defendant's newly-raised legal arguments.

### 1.  The Court Should Not Vacate its Order on Plaintiff's Motion to Compel Based Upon a Purported Failure to Properly Confer

Defendant's attorney's first argument is that the Court's July 23, 2015 Order should be vacated on account of Plaintiff's failure to make a "reasonable attempt to confer."  This argument is disingenuous and relies upon a misreading of Plaintiff's L. R. 3.01(g) certificate. Contrary to Defendant's attorney's representation that Plaintiff's counsel left "one voicemail message" and "sent 2 email messages and 1 letter" prior to moving to compel, Defendant actually received (1) one letter in the mail on June 2, 2015; (2) three separate emails, on June 2, 2015, June 10, 2015, and June 16, 2015; and (3) two phone calls and voicemails, each on June 10, 2015 and June 16, 2015.   Additionally, Plaintiff's counsel followed up with Defendant

---

[7] Once again, Defendant's *pro se* status does not, and must not, change this analysis.  *See* Fed. R. Civ. P. 1; CM/ECF 15, 19, 21, 26, 32, 33; *Maus*, 513 F. App'x at 878 ("[P]*ro se* litigants [ ] must comply with procedural rules. Specifically, we have held that *pro se* litigants are subject to the Federal Rules of Civil Procedure, including sanctions for misconduct and for failure to comply with court orders.").

telephonically on June 24, 2015, after the motion to compel had been filed.

While Plaintiff and undersigned certainly understand the purpose and importance of the Local Rule, which as Defendant points out is to "require the parties to communicate and resolve certain types of disputes without court intervention," Defendant simply would not "communicate," making resolution between the parties prior to Court intervention impossible. Even if Plaintiff's conferral was inadequate (which can't possibly be true since the rule contemplates good faith attempts to confer), Defendant cites no law supporting the proposition that an insufficient conferral prior to filing a motion warrants vacating an order on that motion after the order has been violated (and after a motion to show cause is subsequently conferred on and filed).

### 2.   Defendant's Fishing Expedition Case Law is Irrelevant

Defendant's substantive legal argument that "[t]he entire purpose of Plaintiff's request is for fishing expedition" fares no better.  Although Defendant correctly cites four cases that speak to the impropriety of allowing fishing expeditions, none of this is relevant to this case. Defendant first relies upon *In re Ford Motor Company*, a readily distinguishable and inapposite personal injury case.  In *Ford Motor*, the claimant filed suit against an automobile company, alleging that "the seatbelt buckle of Russell's Ford vehicle was defectively designed[.]" *Ford Motor Co.*, 345 F.3d 1315, 1316 (11th Cir. 2003).  To prove this claim, the plaintiff sought direct access to all of the automobile company's voluminous database compilations so that it could search for information to help prove its defective design theory.  *See id.*  The Northern District of Alabama authorized the discovery, but the Eleventh Circuit reversed, finding that the district court abused its discretion because its order failed to justify the allowance of such a broad fishing expedition and failed to address the automobile company's timely objections:

> The district court did not discuss its view of Ford's objections and provided no
> substantive explanation for the court's ruling. … When a party [timely] objects to
> a motion for discovery, a court should rule on the objections and ordinarily give at
> least some statement of its reasons. … While some kind of direct access might be
> permissible in certain cases, this case has not been shown to be one of those cases.
> … By granting the sweeping order in this case, … the district court clearly abused
> its discretion.

*Id.* at 1318.

Defendant next cites *Balfour Beatty Rail, Inc. v. Vaccarello*, wherein a plaintiff sought to

compel the production of "the hard drive of any computer used by [the defendants] … at any

time during 2005 and 2006." *Balfour Beatty*, No. 3:06-cv-551, 2007 WL 169628, *2 (M.D. Fla.

Jan. 18, 2007). During the hearing on the motion to compel production, the plaintiff did "not

provide any information regarding what it seeks to discover from the hard drives." *Id.* at *3.

Accordingly, this Court denied the motion to compel, citing to *Ford Motor* and ruling that

"allowing plaintiff to gain access to defendants' hard drives in this case would permit plaintiff to

engage in a fishing expedition." *Id.*

Defendant's third case is *Carolina Bedding Direct, LLC v. Downen*, a case that again

involved the sort of fishing expedition disapproved by *Ford Motor*. *See Carolina Bedding*, No.

3:13-cv-336, 2013 WL 2431972 (M.D. Fla. June 4, 2013). Defendant's final case refers to

another fishing expedition case that was rendered in 1923, well before the advent of computers.

*See Mobile Gas Co. v. Patterson*, 288 F. 884 (M.D. Ala. 1923).

Not one of the four above cases is relevant here. Those four cases are fundamentally

distinguishable because they merely disapprove of the unrestricted access to litigant's hard drives

and databases for the purpose of conducting fishing expeditions. Here, however, Plaintiff is not

seeking access to only one (1) specifically identified hard drive: Defendant's 2008 MacBook

Pro. And, as explained at the hearing on Plaintiff's Motion to Compel (and is otherwise obvious

based on the context of this lawsuit), Plaintiff is looking for very specific evidence: evidence of

BitTorrent use and Plaintiff's copyrighted works (or, in the alternative, evidence of spoliation or

suppression of evidence). Significantly, this evidence is likely to exist because Defendant stated

that his 2008 MacBook Pro was the only device that connected to his internet during the

infringement period. Defendant's cases are distinguishable on other notable grounds too.[8]

### 3.  Direct Access to Defendant's Hard Drive is Warranted

That this lawsuit does not involve the fishing expedition concerns implicated in

Defendant's cited cases suggests, actually, that production of Defendant's hard drive is

appropriate in this case. Indeed, *Balfour Beatty* emphasized that "[t]he overall purpose of

discovery under the Federal Rule is to require the disclosure of *all relevant information* so that

the ultimate resolution of disputed issues in any civil action may be based on a f*ull and accurate*

*understanding of the facts*, and therefore embody a *fair and just result*. … Discovery in this

district should be practiced with a spirit of *cooperation* and civility." *Balfour Beatty*, 2007 WL

169628 at *1. And every single one of the cases Defendant cites acknowledges that "*direct*

*access might be permissible in certain cases*." This is such a "certain case[ ]" because Plaintiff

---

[8] *Ford Motor* is procedurally distinguishable because discovery was disallowed in that case due to the court's failure to meaningfully rule on timely-made objections. Here, in contrast, no objections were lodged; Defendant expressly waived objections. *Ford Motor* also involved a personal injury action where the defendant's voluminous proprietary databases had no direct connection to the matters in litigation. Here, Defendant's 2008 MacBook Pro is directly at issue in this litigation—it is the instrumentality of Defendant's infringement. *Carolina Bedding* is procedurally distinguishable because that case concerned a plaintiff's request for injunctive relief. *See Carolina Bedding*, No. 3:13-cv-336, 2013 WL 2431972, *1 (M.D. Fla. June 4, 2013). Since only "limited discovery [is] allowed in advance of the hearing on the motion for preliminary injunction," the court ruled that it was improper and premature to allow the plaintiff wholesale access to the defendant's hard drive and email accounts. *See id.* at *2. Here, of course, Plaintiff's access is not premature and is necessary in order to prepare for trial. *Carolina Bedding* is also factually distinguishable because examination of the hard drive "serve[d] no significant benefit." *Id.* at *2. The plaintiff in *Carolina Bedding* sought to examine the defendant's hard drive for evidence to show that defendant was engaged in unlawful competition, but the defendant had already conceded that point and produced responsive discovery. *See id.* ("Defendant acknowledges that he was in competition with Plaintiff but asserts there is no valid noncompetition agreement. Thus, Plaintiff's efforts to prove Defendant is in competition with Plaintiff serve no significant benefit. In addition, Defendant certifies that it has fully responded with all Plaintiff's discovery requests, and the Court finds no reason to doubt Defendant's assertions."). Here, in contrast, Defendant has denied infringing Plaintiff's copyrights, and so Plaintiff's requested discovery remains incredibly relevant and "serves a significant benefit." Moreover, as the record makes clear, Defendant has not fully responded to any of Plaintiff's production requests.

actually recorded Defendant stealing Plaintiff's copyrights and Plaintiff now knows, through discovery, that Defendant's 2008 MacBook Pro was the instrumentality of his infringement.

Although the Middle District of Florida has not yet expressly ruled on the propriety of hard drive imaging in the context of an online copyright infringement case,[9] other courts to do so nearly uniformly hold that "where the computer itself is at the heart of the litigation—where it is, in effect, *an instrumentality of the alleged copyright infringement*—it is *plainly relevant* under Fed. R. Civ. P. 26(b)," and must be produced to the copyright holder for copying. *See, e.g.*, *Capitol Records, Inc. v. Alaujan*, No. 03-cv-11661, 2009 WL 1292977, *1 (D. Mass. May 6, 2009) (so ruling in a similar online infringement action, and allowing plaintiff to create mirror-images of defendant's hard drives); *see also Malibu Media, LLC v Doe*, No. 14-cv-08905, CM/ECF 17 (S.D.N.Y. Mar. 6, 2015) (to ensure that a defendant's hard drive was preserved for future examination, entering a preservation order instructing defendant to preserve his "laptops, desktops, tablets, … and any other device which can be used to connect to the internet, download media files, or store electronic data"); *Oce N. Am., Inc. v. MCS Servs., Inc.*, No. WMN-10-0984, 2011 WL 197976, *4 (D. Md. Jan. 20, 2011) (compelling production of thumb drives because "[t]he information contained on the thumb drives weighs directly on the extent of MCS's alleged use of Oce's intellectual property."); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006) ("The best proof of whether [defendant infringed] would be to examine her computer's hard drive which would show, among other things, the existence of any P2P file-sharing programs and the presence of plaintiffs' copyrighted sound recordings.").

---

[9] Undersigned is not overlooking the order in *Malibu Media v. Roldan*, No. 8:13-cv-3007, CM/ECF 70 (M.D. Fla. Mar. 26, 2015), upon which Defendant disingenuously relies to argue that "Malibu Media's attorneys know all too well that, within the Eleventh Circuit and in this Court, requests to image hard drives are not allowed." CM/ECF 45 at p. 2.  The order in *Roldan*, however, is impertinent because Plaintiff did not oppose entry of that order and Judge McCoun simply entered that order by adopting, as unchallenged, the defendant's own arguments (the same erroneous arguments made here).  Significantly, the Court should note in that very same case, the Court later **allowed** the unfettered hard drive imaging of the defendant's hard drive.

Turning to Eleventh Circuit jurisprudence, Defendant's case law expressly makes clear that direct access to a litigant's database *is appropriate* when there is a "showing of non-compliance with discovery rules." *E.g.*, *Balfour Beatty*, 2007 WL 169628 at *3. The facts before this Court show just that—Defendant has continually violated discovery rules. And, Defendant has also denied infringing Plaintiff's works, making it patently absurd to believe that Defendant would ever simply give Plaintiff the evidence contained on his drive. Defendant was recorded infringing, and his 2008 MacBook Pro has been identified as the instrumentality of his infringement. Precluding Plaintiff's direct access to this instrumentality and expecting Defendant to simply produce the relevant incriminating evidence would be like expecting a thief to pull out of his backpack the merchandise that he was videotaped stealing. If a thief knows that a store owner will never be able to independently search his backpack, he has no reason to produce the merchandise. So too here.

Even if Defendant does not suppress the evidence on his hard drive, given his ongoing disregard of this proceeding, there is at least a cognizable likelihood that he will attempt to delete the computer evidence of his infringement.[10] If Plaintiff is not granted direct unfettered access to Defendant's 2008 MacBook Pro, it cannot identify and access the entirety of the relevant files and, therefore, has no way of detecting spoliation. In this way, depriving Plaintiff direct access to the instrumentality of Defendant's infringement effectively enables Defendant to obstruct

---

[10] Unfortunately, spoliation issues are *frequent* in online copyright infringement cases. Defendants regularly attempt to evade liability by, among other things, deleting files and programs, wiping hard drives clean, reformatting hard drives, replacing and discarding hard drives, suppressing evidence, and lying under oath in discovery responses, depositions, and hearings. Copyright plaintiffs are only able to identify these misdeeds by imaging and examining defendants' complete hard drives. *See e.g. Malibu Media, LLC v. Harrison*, No. 1:12-CV-01117-WTL, 2014 WL 7366624, at *1 (S.D. Ind. Dec. 24, 2014) (defendant threw away the hard drive in use during the period of recorded infringement and replaced it); *Malibu Media, LLC v. Tashiro*, No. 1:13-CV-00205-WTL, 2015 WL 2371597, at *1 (S.D. Ind. May 18, 2015) *report and recommendation adopted,* No. 1:13-CV-205-WTL-MJD, 2015 WL 3649359 (S.D. Ind. June 11, 2015) (defendants erased files from hard drive, suppressed evidence, and lied under oath regarding same); *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779 (E.D. Pa. 2013) (defendant wiped hard drive clean, reinstalled operating system, and lied under oath at evidentiary hearing regarding same); *Arista Records, L.L.C. v. Tschirhart*, 241 F.R.D. 462 (W.D. Tex. 2006) (defendant erased data from hard drive prior to producing it).

justice and defraud the Court.

### D.  Defendant's Alternative Proposed Restrictions are Inadequate

As an alternative to vacating its July 23, 2015 Order, Defendant asks the Court to impose

retroactive restrictions on Plaintiff's examination.  The requested restrictions are unworkable.

> **1.  Defense Counsel Erroneously Conflates Imaging With Examination; Although Only Relevant Files However Will be Examined by Plaintiff's Expert and Revealed to Plaintiff, The Entire Hard Drive Must be Imaged**

Defendant's entire hard drive must be produced for imaging.  The relevant information

that Plaintiff seeks could be located in any number of various destinations on the drive and it

would be impossible to say that Defendant must only, for example, produce a copy of

destinations A and B but not X, Y, or Z.  Further, the potential for discovery abuse, as described

above, is significant if Defendant is permitted to pick and choose what sectors of his drive he

will copy and produce to Plaintiff.  And, evidence of suppression and spoliation (*e.g.*, erased files

and folders, hard drive reformatting, etc.) is extremely hard to detect.  An incomplete copy of

Defendant's hard drive would unfairly deprive Plaintiff the ability of conducting a proper full

examination of the evidence.  This would inequitably and baselessly prejudice Plaintiff because,

absent production of a complete image of Defendant's full hard drive, Plaintiff is deprived "a full

and accurate understanding of the true facts."  *United States v. $209,960.00 in U.S. Currency*,

2011 WL 2173795 at * 1 (M.D. Fla. 2011).

> **2.  There is No Less "Invasive" Means to Produce the Instrumentality of Infringement and Plaintiff is Entitled to Hire an Expert of Its Choosing**

Defendant's argument that "a less invasive method of production exists" because

Defendant could produce "a print-out of computer data, based on specific and relevant search

queries" is false.  Illegal copies of Plaintiff's digital movies <u>cannot</u> be printed and produced to

Plaintiff; neither can copies of BitTorrent software or evidence that Defendant erased or attempted to erase files, folders, or software, or reformat his hard drive. To the extent that Defendant wants to "define reasonable search parameters," Plaintiff agrees that it will only seek information related to copyright infringement, BitTorrent, spoliation, and suppression of evidence. This has always been the case. But Plaintiff's agreement to specific search parameters still requires Defendant to produce his *complete* hard drive for imaging. And Plaintiff is still entitled to hire an expert of its choosing to examine the cloned drive for evidence falling within the categories stated. Defendant's request that "a court-appointed, third-party neutral expert conduct the search" is improper because Defendant is not entitled to dictate how Plaintiff tries its case. Parties have a right to choose their own attorneys and experts.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendant's Motions, reaffirm Defendant's obligation to immediately turn over his computer, and grant Plaintiff any additional relief deemed appropriate.

Respectfully submitted,

LIPSCOMB EISENBERG & BAKER, PL

By: */s/ Daniel C. Shatz*
**M. Keith Lipscomb, Esq.**
Florida Bar No. 429554
klipscomb@lebfirm.com
**Daniel C. Shatz, Esq.**
Florida Bar No. 94696
dshatz@lebfirm.com
**Emilie Kennedy, Esq.**
Florida Bar No. 92808
ekennedy@lebfirm.com
2 South Biscayne Blvd.
Penthouse 3800
Miami, FL 33131
Telephone: (786) 431-2228
Facsimile:  (786) 431-2229

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By: <u>/s/ *Daniel C. Shatz*</u>