UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

MALIBU MEDIA, LLC,

        Plaintiff,

v.

GREGORY WEAVER,

        Defendant.

CASE NO. 8:14-cv-01580-VCM-TBM

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

Plaintiff, Malibu Media, LLC ("Plaintiff"), by and through undersigned, files this opposition to Defendant's "Motion for an Order Compelling Plaintiff to Provide Complete Responses to Defendant's Discovery Requests" [CM/ECF 79]. Plaintiff states as follows.

**I.      INTRODUCTION**

Defendant propounded Interrogatory #25 and Request for Production #39 ("Defendant's Discovery Requests") in October. After Plaintiff objected to Defendant's Discovery Requests, Defendant noticed Plaintiff's 30(b)(6) corporate representative for a deposition and included within the notice document requests to obtain what had been previously requested through Defendant's Discovery Requests. Plaintiff moved for a protective order, and on December 15, 2015, this Court held a telephonic hearing on the scope of the deposition and the propriety of Defendant's Discovery Requests. The Honorable Judge McCoun held that although Defendant had the right to depose Plaintiff's 30(b)(6) representative, Defendant's document requests were "harassing" and "overbroad in scope." This Court accordingly struck Defendant's Discovery Requests from the deposition notice, and advised Defendant that he could obtain the information sought through Plaintiff's 30(b) representative's deposition testimony.

1

Although displeased with this ruling, Defendant did not object or request reconsideration; instead, and without further conferral with Plaintiff, Defendant filed what he entitles a "Motion for an Order Compelling Plaintiff to Provide Complete Responses to Defendant's Discovery Requests."[1] Through this Motion, Defendant raises the same arguments he did at the December 15, 2015 hearing and asks the Court to do now in the context of discovery what it declined to do in the context of Plaintiff's 30(b)(6) deposition—*i.e.*, require compliance with Defendant's Discovery Requests. Just as then, and as explained further below now, Defendant's Motion to Compel should also be denied. And, Plaintiff should be reimbursed for the costs it was forced to needlessly incur in opposing Defendant's Motion.

## II.   <u>LEGAL STANDARD</u>

"The district court has broad discretion to compel or deny discovery." *Jackson v. Corr. Corp. of Am.*, 606 F. App'x 945, 950 (11th Cir. 2015). "[E]ven though the rules of discovery are to be given a liberal application, they are not a license to become foraging expeditions which require inordinate expense or amount to overly broad and far-reaching discovery requests." *Jones v. Colorcraft Corp., Augusta Div.*, 37 Fed. R. Serv. 2d 819 (S.D. Ga. 1983). "Discovery should be tailored to the issues involved in the particular case. Relevancy thus equates to whether the material sought will have a substantial effect on the case's outcome. Relevancy also pertains to the matters being asked being relevant to the issues to be tried." *Id.* (internal citations omitted). "Discovery rules do not permit a party to go on a 'fishing expedition' for relevant information." *Belair v. Target Corp.*, No. 2:12-CV-00119-UA-SPC, 2013 WL 308883, at *2

---

[1] Even were Defendant's Motion to Compel construed as a Motion to Reconsider, Defendant fails to carry his burden because he merely re-hashes the same arguments that were rejected during the parties' December 15, 2015 telephonic hearing. *See, e.g.*, *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 687 F. Supp.2d 1322, 1324 (S.D. Fla. 2009) ("A motion for reconsideration should not be used to reiterate arguments already made or to ask the Court to rethink what the Court already thought through. A motion for reconsideration premised on previously rejected arguments should be denied.").

(M.D. Fla. Jan. 25, 2013) (quoting *Linares v. Broward County Sheriff's Office*, 347 Fed. Appx. 424, 42 (11th Cir.2009)). "It is no defense for Defendant to contend that he needs discovery to establish whatever facts may support [one or more defenses]. He must, in the first instance, have a good faith basis for his assertion of them." *Malibu Media v. Doe*, No. 1:14-cv-00758-JFM, CM/ECF56 (D. Md. Aug. 28, 2015).

### III. ARGUMENT

#### A. Defendant's Motion to Compel Should be Denied

Defendant's Discovery Requests ask Plaintiff to provide, for each one of its 31 copyrighted films, detailed information and agreements regarding "each and every individual who contributed to creating" Plaintiff's 31 films, including: (1) the producers; (2) executive producers; (3) production assistants; (4) production managers; (5) directors; (6) assistant directors; (7) directors of photography; (8) camera operators; (9) camera assistants; (10) production designers; (11) art directors; (12) set designers; (13) set decorators; (14) location managers; (15) location scouts; (16) scriptwriters; (17) script supervisors; (18) treatment writers; (19) casting directors; (20) digital imaging technicians; (21) gaffers; (22) lighting technicians; (23) production sound mixers; (24) boom operators; (25) costume designers; (26) make-up artists; (27) post-production supervisors; (28) editors; (29) assistant editors; (30) visual effects producers; (31) visual effects editors; (32) sound editors; (33) music supervisors; (34) musicians and (35) composers. *See* CM/ECF 79-1 & 79-2. This same information was requested through Defendant's notice of 30(b)(6) deposition of Plaintiff, and, after oral argument, this Court deemed the requests "harassing," "overbroad," and "disproportionate to the actual needs of the case." Here too, Defendant's Motion to Compel should be denied for the same reasons.

1. **Defendant's Discovery Requests are Harassing and Irrelevant to Ownership; Defendant Obtained all Needed Information Regarding Plaintiff's Ownership of its Copyrights at Plaintiff's Deposition**

Although Defendant confirmed at his deposition that he lacks a basis to continue to question or even suspect that anyone other than Plaintiff has or can claim a copyrightable interest in one of Plaintiff's movies or that Plaintiff may not own its copyrights, Defendant argues that he needs personal information and agreements regarding "each and every individual who contributed to creating" Plaintiff's 31 films to see if "Plaintiff followed the formalities of the work-made-for-hire doctrine." CM/ECF 79 at p. 6. Although Plaintiff indeed possesses work-made-for-hire agreements with its contributors, those documents were prepared simply for Plaintiff's internal records and as a precautionary measure in case the law ever changes to require them. Since they are irrelevant and Defendant's request for them is harassing, Plaintiff objected to their production and obtained a protective order. Now, instead of providing legal analysis or discussion as to their relevancy, Defendant simply argues that his request for Plaintiff's various work-for-hire agreements is neither harassing nor burdensome:

> Plaintiff's home-movie-quality pornography – videos of about 15 minutes of less … did not require "the proverbial 'cast of thousands,'" …. Rather, the number of creative contributors for the allegedly downloaded videos would be significantly less. Such production, despite Plaintiff's argument, would not entail producing mountains of paperwork but in fact, in total, would likely be fewer than 50 sheets of paper. … [T]he number of creative contributors for the works should be wholly minimal. In contrast to big-budget blockbuster productions, Plaintiff's videos are simple and short with minimal creative contributions.

CM/ECF 79 at p. 8, 13.

Defense Counsel's frivolous repeated attempts to downplay the creative elements and value of Plaintiff's copyrighted works are made solely to impugn Plaintiff before the tribunal and

4

without any reasonable investigation. Her representations are insulting and provably false.[2] Regardless, neither the quality of Plaintiff's movies nor the amount Plaintiff spent making its movies has anything to do with the copyright ownership analysis. Plaintiff's work-for-hire agreements are irrelevant to determine copyright ownership. To explain, a motion picture is a copyrightable work pursuant to 17 U.S.C. § 102(a)(6), and "[t]he Copyright Act of 1976 provides that copyright ownership 'vests initially in the author or authors of the work.'" *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989) (quoting 17 U.S.C. § 201(a)). Since "[f]ilmmaking is a collaborative process typically involving artistic contributions from large numbers of people," the author of a motion picture is the film's producer, rather than the "actors, designers, cinematographers, camera operators, and [other] technical contributors." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 258 (2d Cir. 2015).

Here, Ms. Field (Plaintiff's owner and 30(b)(6) representative) testified during her deposition that Plaintiff is the producer of each of the works at issue in this case. That is the beginning and the end of the copyright ownership issue since the decisional authority instructs that the producer of a motion picture is its author. Indeed, "[i]f copyright subsisted separately in each of [the other contributors'] contributions to the completed film, the copyright in the film itself, which is recognized by statute as a work of authorship, could be undermined… [C]ontributors may make original artistic expressions, which are arguably fixed in the medium of film footage. But while original and fixation are necessary prerequisites to obtaining copyright

---

[2] Plaintiff, doing business as X-Art.com, has won numerous awards including, most recently, the "2015 Adult Site of the Year." Plaintiff spends ***over two million dollars ($2,000,000.00) a year*** producing its films to ensure that each one is created with a "high production value and a cinematic quality." CM/ECF 5-2. The entertainment industry has recognized that "the mom-and-pop American start-up has grown into a global production team," and Plaintiff has been acclaimed as "art-house cinema" and "perhaps the world's most sophisticated cinema erotica [with] next-level cinematography." *See, e.g.*, http://www.gq-magazine.co.uk/girls/articles/2013-03/13/brigham-colette-field-x-art-sex-scene. Plaintiff's films are hardly "home-movie-quality pornography," as Defense Counsel unfairly and erroneously represents.

protection, they are not alone sufficient: Authors are not entitled to copyright protection except for the 'works of authorship' they create and fix." *16 Casa Duse*, 791 F.3d at 258; *see also Garcia v. Google, Inc.*, 786 F.3d 733, 743 (9th Cir. 2015) (holding that individual actors to a film do not have a copyright interest in the film).

Plaintiff has established *prima facie* evidence of its valid ownership not only because it is the producer but also because it obtained lawful copyright registrations for the at-issue works. *See* CM/ECF 10-2 (providing registration information). Ownership of a copyright "is demonstrated through compliance with the formalities of registration," *Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, 773 F. Supp.2d 1288, 1301 (M.D. Fla. 2011), and "[a] certificate of registration made before or within five years after first publication of the work is prima facie evidence of ownership." *Garden Meadow, Inc. v. Smart Solar, Inc.*, 24 F. Supp.3d 1201, 1207 (M.D. Fla. 2014); *see also Olem Shoe Corp. v. Washington Shoe Corp.*, 591 Fed. Appx. 873, 881–82 (11th Cir. 2015) (finding, in light of certificate of copyright registration, "that the first element of copyright infringement—ownership of a valid copyright—is satisfied. … This leaves only the element of copying to be discussed."). Here, Defendant was provided with copies of the registrations and duplicate copies are readily available from the United States Copyright Office's website. Further, Plaintiff filed a declaration, under penalty of perjury, stating that "[n]o other person or entity has or can claim an ownership interest in the copyrights." CM/ECF 5-2 at p. 1. And, Defendant deposed Plaintiff's owner under oath for hours during a 30(b)(6) deposition, during which time Plaintiff's owner spoke at length regarding Plaintiff's ownership. Plaintiff's valid copyright ownership is further corroborated by the fact that not once in the more than 4,000 infringement lawsuits Plaintiff has filed to protect its intellectual property has anyone other than Plaintiff *ever* claimed an ownership in one of Plaintiff's movies. Under

the circumstances, the only additional information the work-made-for-hire agreements will provide is the actual identities of Plaintiff's various contributors. But this added information is not relevant to the ownership of the copyrights.

Significantly, Defendant lacks standing to argue—and cannot avoid infringement liability by arguing—that one or more of Plaintiff's contributors have copyrightable interests in the infringed films. *Cf. Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1157 (9th Cir. 2010) ("[D]efendants would have no standing to complain that the agreement was never put in writing. [I]t would be unusual and unwarranted to permit a third-party infringer to [challenge the formalities of the work-made-for-hire doctrine] to avoid suit for copyright infringement."). Defendant's purpose in propounding Defendant's Discovery Requests is not to obtain identifiable and relevant information to challenge ownership but, as the Honorable Judge McCoun already held, to go on a fishing expedition and otherwise harass Plaintiff and increase its litigation costs. This is something that the discovery rules do not permit. *See* Fed. R. Civ. P. 26(g)(1)(B); *see also In re Kivisto*, 521 Fed. Appx. 886, 888–89 (11th Cir. 2013) (affirming the denial of an application for discovery in aid of a foreign proceeding where discovery request was "made in bad faith, as a fishing expedition, or as a means to harass [and] drag out litigation"); *Piacenti v. Gen. Motors Corp.*, 173 F.R.D. 221, 224 (N.D. Ill. 1997) ("The legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery."). This Court already advised Defendant that he could inquire about Plaintiff's ownership during Plaintiff's 30(b)(6) deposition but that he would "be stuck" with that under-oath testimony since "the Court will not countenance excessive, overbroad, irrelevant or abusive discovery requests that are

7

disproportionate to the actual needs of the case." CM/ECF 70 at p. 2, 76. There is no good cause for reconsideration.

### 2. Defendant Waived a Compilation or "One Work" Defense and Such a Defense Fails on its Face

Defendant next argues that Defendant's Discovery Requests are relevant to a compilation or "one work" defense. *See* CM/ECF 79 at p. 9–10. Defendant's theory is that Plaintiff's copyrighted films "are published under the same website on which they appear as a collective work[3], accessible to user members by one single subscription. Similarities amongst contributors are among many of the aspects that will go toward determining whether the videos are separate 'works' or a 'compilation'[4] under the Copyright Act." *Id.* Thus, Defendant claims that Defendant's Discovery Requests will yield information regarding who contributed to each of the 31 independent films and will speak to whether they should be deemed one single work "like chapters in a book or songs in an album." *Id.* Defendant is mistaken because a compilation defense was never raised and is contextually inapplicable as a matter of law.

First, Defendant *never* raised—and therefore waived—a compilation defense. *See* CM/ECF 27. This argument was raised for the first time during the December 15, 2015 telephonic hearing, and the Honorable Judge McCoun ruled that discovery would be confined to issues, claims, and defenses raised by the pleadings. Second, even if not waived, a compilation defense does not apply in the context of 31 independently created and infringed copyrighted films. None of the cases which Defendant cites to support his compilation argument involve

---

[3] A "collective work" is "a work, such as a periodical issue, anthology, or encyclopedia, in which a number of contributions, constituting separate and independent works in themselves, are assembled into a collective whole." 17 U.S.C. § 101.

[4] A "compilation" is "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The term 'compilation' includes 'collective works.'" 17 U.S.C. § 101.

films; they each involve "chapters in a book or songs in an album." CM/ECF 79 at p. 9–10. It would be incoherent to deem Plaintiff's 31 copyrighted movies a compilation simply because Defendant could have—but chose not to—lawfully obtain access to them by subscribing to Plaintiff's website. By way of analogy, a plethora of copyrighted content is accessible on Netflix.com to Netflix subscribers, but the content on Netflix is not thereby transformed into a single work or compilation for purposes of copyright law. Finally, even if the defense were available—and it is not—Defendant's Discovery Requests are unnecessary. Plaintiff already provided Defendant with copies of the at-issue films and so Defendant can view them and easily determine that they are each independent, stand-alone, and unrelated works made with a unique set of performers, locations, set designs, lighting effects, camera angles, and music.

### 3. Defendant's Discovery Requests Seek Confidential Information

Plaintiff also objected to Defendant's Discovery Requests for detailed information regarding the identities of every single individual who assisted Plaintiff in some capacity in creating the at-issue films on the basis that the requests seek the disclosure of confidential business information. *See* CM/ECF 79-3 ("Plaintiff's employees, independent contractors, and identities of its third party vendors is confidential business information pursuant to Fed. R. Civ. P. 26(c)."). Rather than confer with Plaintiff about this objection or attempt to narrow the scope of his requests, Defendant filed a Motion to Compel, insisting that Plaintiff's confidentiality objection is "improper and should be overruled" in light of Florida Statute section 366.093. CM/ECF 79 at p. 11–12. Defendant's cited statute has no application here. Florida statute section 366.093 defines "confidential business information" within the context of the Florida Public Service Commission's inspection of public utility records. *See* § 366.093, Fla. Stat. To undersigned's knowledge, the statute has never been applied outside the context for which it was

enacted, and has certainly never been applied in the context of a federal lawsuit brought under the Copyright Act. Since this lawsuit involves neither the Florida Public Service Commission nor the inspection of public utility records, Defendant's reliance on section 366.093 is misplaced.

Rather than the administrative Florida statute, the applicable law is set forth in the Federal Rules of Civil Procedure and Evidence, which recognize "that a trade secret or other confidential research, development, or commercial information [need] not be revealed or [should] be revealed only in a designated way." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001) (citing Fed. R. Civ. P. 26(c)). When a party is engaged in a highly competitive industry (like the entertainment industry) and possesses information that is the subject of a non-disclosure agreement, the information is confidential, as that term has been interpreted by the Federal Rules and interpreting case law. *See, e.g.*, *I.S.E.L., Inc. v. Am. Synthol, Inc.*, No. 3:08-cv-870, 2009 WL 3367237, at *4 (M.D. Fla. Oct. 15, 2009) (allowing disclosure under such circumstances only pursuant to an "Attorney's Eyes Only" protective order).

Here, Plaintiff's employees and contractors who contribute to the creation of Plaintiff's films are also involved in mainstream commercials, advertisements, and feature films. To preserve their reputations and marketability before the media and the highly competitive mainstream entertainment industry—and to avoid poaching and competition within the equally competitive adult entertainment industry—Plaintiff's employees and contractors have entered into confidentiality agreements with Plaintiff which forbid Plaintiff from disclosing their identities absent a protective order. Plaintiff's owner and 30(b)(6) representative explained this to Defense Counsel during her deposition. In fact, Plaintiff's counsel had previously so advised Defendant's attorney during a telephone conference on November 13, 2015. At that time,

Plaintiff's counsel explained to Defense Counsel that work-for-hire agreements are irrelevant, but that perhaps one could be provided, either in redacted form or pursuant to a protective order. Defendant did not follow up on the issue prior to filing his Motion to Compel. Defendant's failure to adequately confer and his frivolous reliance on an inapplicable administrative statute indicate that, again, Defendant is on a wild fishing expedition intended not to obtain relevant information but to harass Plaintiff and its employees and contractors.

### B. Plaintiff, Not Defendant, Should be Awarded its Attorneys' Fees

Defendant asks the Court to award him the attorney's fees that he presumably incurred in filing his Motion to Compel. *See* CM/ECF 79 at p. 17–18. Defendant's argument is that "it is Plaintiff who has necessitated this motion by not producing any answer or document in response to Defendant's discovery requests beyond its objections." *Id.* Defendant is mistaken and his argument is disingenuous. Fees are allowable only if (1) Defendant's Motion to Compel is granted; (2) Defendant adequately conferred in a good faith effort to obtain discovery without court intervention; and (3) Plaintiff's objection was not substantially justified. *See* Fed. R. Civ. P. 37(a)(5)(A). Here, none of the prerequisite conditions for Defendant's requested fees are satisfied. First, as explained throughout, Defendant's Motion to Compel should not be granted. Second, Defendant did not make a good faith effort to obtain his requested discovery prior to filing his Motion to Compel and did not, for example, agree to limit the scope of his requests or to receive partial production pursuant to a protective order. Third, and perhaps most significantly, Plaintiff's objections are substantially justified. Indeed, Plaintiff filed a motion for a protective order as to these Discovery Requests when Defendant incorporated them into his 30(b)(6) deposition notice and, after oral argument, this Court struck the deposition notice and

advised Defendant that Defendant's Discovery Requests were overbroad and harassing. They are no less overbroad and harassing here, in the formal discovery context.

Under the circumstances, it is Plaintiff and not Defendant who is entitled to recoup its reasonable attorneys' fees in opposing Defendant's Motion to Compel. The law is well established that if a court denies a motion to compel, it must order the moving party and/or its attorney to pay the expenses of the respondent, including attorney's fees, unless the motion was "substantially justified" or an award of expenses would be unjust. Fed. R. Civ. P. 37(a)(5)(B). According to the Advisory Committee Notes, "substantial justification" exists where there is a genuine dispute regarding the necessity of disclosure which warrants court involvement. Fed. R. Civ. P. 37 Advisory Committee Notes to 1970 amendment. Further, substantial justification is satisfied only "if there is genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 2550, 101 L. Ed. 2d 490 (1988) (internal citations omitted).

In this case, Defendant's Motion to Compel was *not* substantially justified because just days before he filed his Motion Defendant was advised that Defendant's Discovery Requests were harassing, overbroad, and disproportionate to the needs of this case. Defendant's Motion to Compel is an improper attempt to circumvent this Court's prior ruling; the Motion does not raise any new arguments, it merely re-hashes the exact arguments asserted and rejected during the parties' December 15, 2015 telephonic hearing. Far from being "substantially justified," Defendant's Motion to Compel is unjustified. *See, e.g.*, *Barrios v. Regions Bank*, No. 5:13-cv-29, 2012 WL 5230653, at *6 (M.D. Fla. Sept. 16, 2013) (sanctioning a litigant and her attorney for raising claims based on a legal theory that the court had previously rejected); *Gonzalez v. GMAC Mortg.*, No. 5:13-cv-72, 2013 WL 4494119, at *4 (same); *Int'l Schs. Servs., Inc. v.*

*AAUG Ins. Co., Ltd.*, No. 10-62115-CIV, 2012 WL 5635590, at *15 n.10 (S.D. Fla. Nov. 15, 2012) (raising arguments previously rejected by the Court is "frivolous" and indicates "a dilatory purpose"). Pursuant to the Federal Rules, then, the Court "*must … require*" Defendant, his attorney, or both to pay Plaintiff its reasonable expenses in opposing his Motion to Compel. *See* Fed. R. Civ. P. 37(a)(5)(B).

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel [CM/ECF 79] and award Plaintiff its reasonable attorney's fees for opposing same pursuant to Fed. R. Civ. P. 37(a)(5)(B).

> Respectfully submitted,
>
> LIPSCOMB EISENBERG & BAKER, PL
>
> By: */s/ Daniel C. Shatz*
> **M. Keith Lipscomb, Esq.**
> Florida Bar No. 429554
> klipscomb@lebfirm.com
> **Daniel C. Shatz, Esq.**
> Florida Bar No. 94696
> dshatz@lebfirm.com
> **Jason H. Cooper, Esq.**
> Florida Bar No. 98476
> jcooper@lebfirm.com
> 2 South Biscayne Blvd.
> Penthouse 3800
> Miami, FL 33131
> Telephone: (786) 431-2228
> Facsimile:  (786) 431-2229
> *Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

> By: */s/ Daniel C. Shatz*