UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MALIBU MEDIA, LLC,

       Plaintiff,

v.                              Case No. 8:14-cv-1580-T-33TBM

GREGORY WEAVER,

       Defendant.
_____/

**ORDER**

    This matter comes before the Court in consideration of Plaintiff Malibu Media's Motion for Summary Judgment (Doc. # 74), filed on December 11, 2015. Also before the Court is Defendant Gregory Weaver's Motion for Summary Judgment (Doc. # 98), filed on January 28, 2016. Malibu Media and Weaver filed their responses on March 3, 2016, (Doc. # 121), and December 31, 2015, (Doc. # 82), respectively. Malibu Media filed its reply on January 14, 2016, (Doc. # 92), and Weaver filed his reply on March 21, 2016, (Doc. # 126).

    The Motions are now ripe for review. For the reasons stated herein, the Court denies both Motions as they relate to Count I of the Amended Complaint. Further, the Court grants in part and denies in part Malibu Media's Motion as it concerns Weaver's defenses and affirmative defenses.

1

I.    **Background**

This lawsuit arises from alleged copyright infringement
of 31 adult films. (Doc. ## 10, 10-2). Malibu Media, doing
business as X-Art.com, produces adult films. (Doc. # 5-2 at
¶¶ 3, 6-8). Malibu Media publishes its films on its website,
X-Art.com, and charges its members a fee to access its video
library. (Id. at ¶¶ 9, 12). However, Malibu Media has
encountered problems due to use of BitTorrent to download its
films online without paying Malibu Media's membership fee.
(Id. at ¶¶ 16, 18-19). Malibu Media has "_never_ authorized
anyone to put [its] works on a torrent website," (Id. at ¶
29) (emphasis in original), but its works have still been
made available on such sites. (Id. at ¶ 28).

BitTorrent is a peer-to-peer file sharing system that
allows users to form swarms to download and upload pieces of
large files from each other. Malibu Media, LLC v. Reynolds,
No. 12 C 6672, 2013 WL 870618, at *1 (N.D. Ill. Mar. 7, 2013).
"In order to join a swarm and use the BitTorrent protocol, a
user must first download a BitTorrent Client Program, a
software program that serves as the user's interface during
the process of uploading and downloading data." Id. at *2.

There are two types of peers, i.e., people who join a
swarm. Id. Leechers are those peers acquiring a file, whereas

seeds already have the file and act as a source from which leechers may obtain the file. Id. "As a leecher acquires new content, it simultaneously shares its content with other leechers in the torrent." Annemarie Bridy, Is Online Copyright Enforcement Scaleable?, 13 Vand. J. Ent. & Tech. L. 695, 701 (2011).

Furthermore,

> Every torrent requires at least one seed. . . . When a seed user decides to distribute a new file, he or she uses the Client Program to create a torrent descriptor file. The Client Program then takes the target computer file, also known as the Initial Seed, and divides it into segments called pieces. Once the initial seed is divided into pieces, the Client Program assigns each piece a unique alphanumeric identifier (a hash identifier) and records each piece's hash identifier within the torrent descriptor file.

Reynolds, 2013 WL 870618, at *2 (internal quotation marks and citations omitted); see also (Doc. # 74-2 at ¶¶ 12-13) (describing similar process).

The seed file is also assigned a unique identifying number. In re BitTorrent Copyright Infringement Cases, Nos. 12-1188, 12-1189, 12-1258, 12-1259, 12-1260, 12-1280, 12-1281, 12-1341, 12-1342, 12-1398, 12-1493, 2013 WL 501443, at *3 (C.D. Ill. Feb. 11, 2013); (Doc. # 74-2 at ¶ 13). "[T]he hash identifier works like an electronic fingerprint,

identifying the source and origin of the piece and verifying that the piece is authentic, error-free, and uncorrupted." Reynolds, 2013 WL 870618, at *2; see also (Doc. # 74-2 at ¶ 13).

Malibu Media previously explained that "[a] torrent file does not contain the content to be distributed; it only contains information about those files, such as their names, sizes, folder structure, and cryptographic hash values for verifying file integrity." Malibu Media, LLC v. Sharp, 8:14-cv-2138-T-33MAP (M.D. Fla. Oct. 19, 2015) (Doc. # 81 at 3) (internal quotation marks and citation omitted). The actual files that are downloaded, e.g., a movie, are not contained in torrent files. Id. at 4.

Peers may download and upload pieces of the initial seed after it has been uploaded to a torrent site. Reynolds, 2013 WL 870618, at *2. "[T]o download a file using the BitTorrent protocol, a peer user must access a torrent site, which indexes torrent files currently available for copying and distribution." Id. at *2; (Doc. # 74-4 at 32, Weaver Depo. at 125:8-22 (describing similar process for how Weaver would obtain files through BitTorrent)). The peer searches for and downloads the torrent file for the film he or she wants to download. See Malibu Media, LLC v. Does 1-28, 295 F.R.D. 527,

4

529 (M.D. Fla. 2012). "Once the torrent file is installed on the peer's computer, the client locates pieces of the film supplied by other peers, [and] downloads them all . . . ." Id.

A "tracker," which is a permanent internet server, coordinates file distribution within a swarm. In re BitTorrent Copyright Infringement Cases, 2013 WL 501443, at *3.

> As a peer receives pieces of the seed file, that peer automatically begins to upload those pieces to other peers in the swarm. . . . A peer may still avoid the burden of uploading to other peers by disconnecting from the swarm after obtaining a complete copy of the desired file.

Reynolds, 2013 WL 870618, at *2.

After a peer receives all pieces of the desired file, the Client Program arranges the pieces into the correct order, thereby producing an identical copy of the initial seed. Id. at *3; see also In re BitTorrent Copyright Infringement Cases, 2013 WL 501443, at *3 (stating, "[u]sing the Hash identifiers, BitTorrent compares th[e] newly-assembled movie to the original movie to make certain that all the pieces have been received and that all are correct and not corrupted. At that point, the download is complete and the user has a completely viewable copy of the movie").

Malibu Media employs an investigator to identify IP addresses used to download files via BitTorrent. (Doc. # 74-2 at ¶¶ 6-7, 10-11). To begin the process, Malibu Media provides its investigator with a list of its copyrighted films. (Id. at ¶ 11). The investigator then searches for those titles on well-known torrent websites. (Id. at ¶ 12). If the investigator's search yields a match, it downloads the torrent file and joins the swarm. (Id. at ¶ 13).

The investigator utilizes a proprietary BitTorrent Client to connect to swarms. (Id. at ¶ 14). Once the investigator joins a swarm, its data-collection system begins to log file sharing transactions within the swarm. (Id.). The investigator's BitTorrent Client is, by design, incapable of uploading or distributing files. (Id.).

Once in the swarm, the investigator connects to peers through a connection that cannot be spoofed. (Id. at ¶ 15). After the connection is made, the investigator downloads a piece or pieces of the Malibu Media film in question from the computer connected to the swarm. (Id.). Data sent through this connection is delivered in packets. (Id. at ¶ 16). A Packet Analyzer records these packets and saves it in a computer file known as Packet Capture file (PCAP). (Id.). The PCAP created shows the IP address distributing the piece, the

6

IP address receiving the piece, the piece transmitted, the transaction protocol, and the time of the transaction. (Id. at ¶ 20).

Each transaction is also recorded on a MySQL server file. (Id. at ¶ 21). Entries on the MySQL file correlate to a specific PCAP file. (Id.). Furthermore, the PCAP and MySQL files are saved onto write-once-read-many (WORM) drives. (Id. at ¶ 23). Data on a WORM drive is incapable of being manipulated or altered, and can only be destroyed by destroying the drive itself. (Id.).

While monitoring BitTorrent sites, Malibu Media's investigator recorded IP address 173.78.19.241 in swarms downloading and uploading pieces of Malibu Media's films. (Id. at ¶¶ 14, 19-21, 31). As such, Malibu Media filed a one-count complaint against John Doe, the subscriber assigned IP address 173.78.19.241, alleging copyright infringement for 31 films. (Doc. ## 1, 1-2). Malibu Media was granted leave to serve a third-party subpoena prior to a Rule 26(f) conference on Verizon Internet Services, the internet service provider for IP address 173.78.19.241. (Doc. ## 5, 7). After receiving the information from Verizon, Malibu Media filed an Amended Complaint against Gregory Weaver. (Doc. # 10). The Amended

Complaint brings one count for copyright infringement as to 31 films. (Doc. ## 10, 10-2).

The parties have filed cross-motions for summary judgment as to Count I. In addition, Malibu Media seeks summary judgment as to Weaver's defenses. Both Motions are ripe for review.

## II.  **Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing

8

the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Emp'rs Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)). However, if the non-movant's response

consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. <u>Morris v. Ross</u>, 663 F.2d 1032, 1034 (11th Cir. 1981).

Although both parties seek summary judgment as to Count I of the Amended Complaint, "each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." <u>Chao v. Tyson Foods, Inc.</u>, 568 F. Supp. 2d 1300, 1305 n.1 (N.D. Ala. 2008) (citing <u>Chambers & Co. v. Equitable Life Assur. Soc'y of the U.S.</u>, 224 F.2d 338, 345 (5th Cir. 1955); <u>Matter of Lanting</u>, 198 B.R. 817, 820 (Bankr. N.D. Ala. 1996)). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact . . . does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2720, 327-28 (3d ed. 1998). The Court, therefore, will consider each Motion independently. <u>Meridian Constr. & Dev., LLC v. Admiral Ins. Co.</u>, 105 F. Supp. 3d 1331, 1338 (M.D. Fla. 2013) (stating, "with cross-summary judgment motions, consideration of each motion must be undertaken on its own merits with inferences drawn in favor of the nonmoving party on each motion"); <u>Chao</u>, 568 F. Supp. 2d at 1305 n.1.

10

III. **Analysis**

    A.   **Count I of the Amended Complaint**

    "A finding of copyright infringement requires proof of '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Olem Shoe Corp. v. Wash. Shoe Corp., 591 Fed. Appx. 873, 881 (11th Cir. 2015) (quoting Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1315 (11th Cir. 2010)). In response to Malibu Media's Motion, Weaver "ask[ed] that the Court allow [him] through the close of the discovery period to present evidence negating [Malibu Media's] claim of copyright ownership." (Doc. # 82 at 14). As Weaver acknowledges in his Motion, discovery is closed. (Doc. # 98 at 3). Weaver has not presented evidence or further argument contesting Malibu Media's copyright ownership.

    For its part, Malibu Media submitted screenshots of certificates of registration for each of the 31 titles listed in the Amended Complaint. (Doc. # 74-1). "A certificate of registration made before or within five years after first publication of the work is prima facie evidence of ownership." Garden Meadow, Inc. v. Smart Solar, Inc., 24 F. Supp. 3d 1201, 1207 (M.D. Fla. 2014); see also Olem Shoe Corp., 591 Fed.

Appx. at 882. Therefore, the element of ownership has been satisfied.

Copying may be proven by either direct or indirect evidence. <u>Baby Buddies</u>, 611 F.3d at 1315. A plaintiff seeking to establish infringement through indirect evidence must show the works are either strikingly or substantially similar, depending on whether the plaintiff can prove access.

A "reasonable opportunity to view" is regarded as access. <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1249 (11th Cir. 1999) (citation omitted). Weaver admits to using BitTorrent to download adult films (Doc. # 74-4 at 30, Weaver Depo. at 114:8-13); Weaver was aware of Malibu Media (<u>Id.</u> at 115:10-15); Weaver admits to downloading Malibu Media's films through BitTorrent  (<u>Id.</u> at 116:12-16); and Weaver admits to watching films produced by Malibu Media (<u>Id.</u> at 115:19-25).

In addition, torrent files for 25 of the 31 titles listed in the Amended Complaint were found on Weaver's hard drive. (Doc. ## 74-3 at 5); <u>cf.</u> (Doc. # 98-1 at 4-5) (stating only 19 torrent files were found). As Weaver notes, "the existence of 'torrent files' on [his] computer suggests that [he] had an opportunity to copy the works." (Doc. # 98 at 17). There is also evidence that IP address 173.78.19.241 uploaded a piece of each of the 31 films at issue. (Doc. #74-2 at ¶¶ 20-

21). Given that Weaver admits using BitTorrent to download Malibu Media films, IP address 173.78.19.241 uploaded a piece of each film at issue in this case, and torrent files for at least 19 of the films were found on Weaver's hard drive, the Court finds that Weaver had access to the 31 titles at issue.

Because access has been shown, Malibu Media must establish substantial similarity between the alleged copy and the corresponding copyrighted film for all 31 films at issue. See Baby Buddies, 611 F.3d at 1315. Substantial similarity exists if "'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" Id. (quoting Oravec v. Sunny Isles Luxury Ventures, L.C., 527 F.3d 1218, 1224 (11th Cir. 2008)).

The Court finds a genuine issue of material fact exists as to whether Weaver copied the 31 films listed in the Amended Complaint. To begin, there is dispute in the record regarding how many torrent files for the at-issue films were found on Weaver's hard drive. Compare (Doc. # 74-3 at 5) (stating 25 torrent files were found), with (Doc. # 98-1 at 4-5) (stating 19 torrent files were found).

In addition, Weaver admits to using BitTorrent (Doc. # 74-4 at 22, Weaver Depo. at 85:3-20) and he even admits to using BitTorrent to download Malibu Media films (Id. at

116:12-16). However, Weaver does not remember how many and
which Malibu Media films he downloaded via BitTorrent. (Id.
at 116:17-117:3). Likewise, when asked whether he recognized
or attempted to download any of the 31 at-issue films, Weaver
testified at his deposition that he did not remember. (Id. at
117:6-118:4). Furthermore, while making much of the fact none
of the 31 films were found on his hard drive, Weaver testified
during his deposition that he would delete a Malibu Media
film within a minute of viewing it. (Id. at 123:22-24).

Additionally, the parties' respective experts have drawn
different conclusions from examining Weaver's hard drive.
Weaver's expert opined that "[p]ortions of the downloaded
files would have been recoverable during [his] search had
they existed . . . in the live and organized folders and files
that are part of the operating system or in unallocated
space." (Doc. # 98-1 at 4-5). The opinion of Weaver's expert
suggests that the 31 at-issue films did not exist on Weaver's
hard drive, which Weaver argues establishes that he did not
download the films.

But, Malibu Media submitted a declaration (made pursuant
to 28 U.S.C. § 1746) explaining that "the overall continued
use of a computer device . . . permanently alters and
compromises the evidence within the drive. Indeed, such

actions overwrite data within the unallocated space of the hard drive." (Doc. # 92-1 at ¶ 5). Furthermore, "[w]hen data in the unallocated space of a drive is overwritten, it is permanently removed from the drive and any evidence contained therein is unrecoverable." (Id.); see also U.S. v. Schaff, 454 Fed. Appx. 880, 881 (11th Cir. 2012) (stating, "when a user deletes a file from his computer, the file actually remains on the hard drive until it is overwritten by other data. Such files are said to be in the computer's unallocated space"). The preceding expert opinions do little to lessen the opaqueness of the record; instead, they highlight that a genuine issue of material fact exists as to whether Weaver downloaded the 31 films at issue in this case.

The record is also unclear as to whether IP address 173.78.19.241 was assigned to Weaver during the period of alleged infringement. As Weaver notes, "IP addresses *can* change frequently due to their dynamic nature." (Doc. # 82 at 12 (quoting Bubble Gum Prods., LLC v. Does 1-80, No. 12-20367-CIV, 2012 WL 2953309, at *4 (S.D. Fla. July 19, 2012)) (emphasis added). However, simply noting that an IP address can be dynamic does not establish that Weaver's IP address was dynamic. See United States v. Berger, Nos. 3:08cr22/LAC, 3:09cv551/LAC/EMT, 2012 WL 3240655, at *7 n.7 (N.D. Fla. June

12, 2012) (noting that, while an IP address can be dynamic, it can also be static).

The record shows that "Weaver was the subscriber assigned IP address 173.78.19.241 on June 4, 2014," and that Weaver's laptop used IP address 173.78.19.241 on February 21, 2014, April 15, 2014, and August 18, 2014. (Doc. # 74-3 at ¶¶ 10, 13). However, the record does not indicate whether IP address 173.78.19.241 was dynamic or static. Accordingly, a genuine issue of material fact exists as to whether Weaver was assigned IP address 173.78.19.241 during the relevant time period.

Weaver further argues that, without having found the 31 at-issue films on his hard drive, Malibu Media does not have an infringing work to present to a jury for comparison. (Doc. # 98 at 17-18). Malibu Media argues that by utilizing the hash values for the pieces received from IP address 173.78.19.241, it can "correlate the pieces to their respective movie files." (Doc. # 121 at 11). Neither party has cited any authority in support of its respective position. Likewise, the Court has not found any authority through its own independent research.

Notably, however, Malibu Media's method of proof comports with other courts' descriptions of how BitTorrent

works. For example, the court in <u>In re BitTorrent Copyright Infringement Cases</u> described how BitTorrent utilizes the pieces' hash values to ensure file integrity as: "[u]sing the Hash identifiers, BitTorrent compares th[e] newly-assembled movie to the original movie to make certain that all the pieces have been received and that all are correct and not corrupted." 2013 WL 501443, at *3. The court in <u>Reynolds</u> described the process in a similar fashion: "the hash identifier works like an electronic fingerprint, identifying the source and origin of the piece and verifying that the piece is authentic, error-free, and uncorrupted." 2013 WL 870618, at *2. The <u>Reynolds</u> court further noted that use of BitTorrent "result[s] in a file identical to the initial seed". <u>Id.</u> at *3. In light of the Court's understanding of how BitTorrent functions——as well as the genuine issue of material fact surrounding whether Weaver downloaded the 31 films at issue——the Court determines summary judgment is not appropriate with regard to Count I of the Amended Complaint.

**B.   <u>Weaver's Affirmative Defenses</u>**

In his Answer, Weaver asserts nine "defenses," some of which are actually affirmative defenses. (Doc. # 27 at 7-10). "[A]n affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of

excuse, justification, or other negating matters." <u>VP Props.</u>
<u>& Dev., LLLP v. Seneca Specialty Ins. Co.</u>, No. 15-11591, 2016
WL 945230, at *3 (11th Cir. Mar. 14, 2016) (citation and
internal quotation marks omitted). "On a plaintiff's motion
for summary judgment, the defendant bears the initial burden
of showing that the defense is applicable." <u>Office of Thrift</u>
<u>Supervision v. Paul</u>, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997)
(citing <u>Blue Cross & Blue Shield v. Weitz</u>, 913 F.2d 1544,
1552 (11th Cir. 1990)). Malibu Media seeks summary judgment
as to all nine defenses, thus Weaver bears the initial burden
of showing the record supports each affirmative defense. <u>See</u>
<u>Id.</u>

### 1.   <u>First Defense</u>

In his First Defense, made under Federal Rule of Civil
Procedure 12(b)(6), Weaver argues that Malibu Media has
failed to state a cause of action. (Doc. # 27 at 7). As Malibu
Media correctly notes, "[a] defense which points out a defect
in the plaintiff's prima facie case is not an affirmative
defense." <u>In re Rawson Food Serv., Inc.</u>, 846 F.2d 1343, 1349
(11th Cir. 1988). But, it does not follow that Weaver's
inclusion of this defense in his Answer was inappropriate.
<u>See</u> Fed. R. Civ. P. 7(a)(2), 12(b)(6), 12(h)(2); <u>FTC v.</u>
<u>Rawlins & Rivera, Inc.</u>, No. 6:07-cv-146-Orl-18KRS, 2007 WL

1730091, at *3 (M.D. Fla. June 14, 2007) (stating, "as the Federal Rules gives the party asserting the defense the option of pleading failure to state a claim by answer . . ., the defendants cannot be faulted for electing to assert the defense in their answer."). Given that a genuine issue of material fact exists as to whether Weaver downloaded the films at issue, the Court denies Malibu Media's Motion with respect to Weaver's First Defense.

### 2.  **Second Defense**

For his Second Defense, Weaver asserts the affirmative defense of "De Minimis Non Curat Lex." (Doc. # 27 at 8). "[F]or similarity to be substantial, and hence actionable, it must apply to more than simply a de minimis fragment. . . . The extent of copying must be assessed with respect to both the quantitative and the qualitative significance of the amount copied to the copyrighted work as a whole." Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., 533 F.3d 1287, 1306-07 (11th Cir. 2008) (first alteration in original) (citation and internal quotation marks omitted). Because a genuine issue of material fact exists as to whether Weaver downloaded the films at issue, Malibu Media's Motion is denied with respect to Weaver's Second Defense.

### 3.   **Third Defense**

Weaver's Third Defense, "Failure to Mitigate Damages," is actually an affirmative defense. Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1286 (11th Cir. 2000) (stating, "[t]his circuit has held that the 'failure to mitigate damages . . . is an affirmative defense'") (second alteration in original) (citation omitted). "[T]he defense of failure to mitigate damages is generally inappropriate when a party seeks only statutory, as opposed to actual, damages." Malibu Media, LLC v. Jason Sterling, No. 8:13-cv-472-T-27EAJ, (Doc. # 19 at 2-3) (M.D. Fla. July 27, 2013). The Amended Complaint does not seek actual damages. (Doc. # 10 at 6-7). Therefore, the Court grants Malibu Media's Motion as to Weaver's Third Defense. See Malibu Media, LLC v. Fitzpatrick, No. 1:12-cv-22767, 2013 WL 5674711, at *3 n.17 (S.D. Fla. Oct. 17, 2013) (finding affirmative defense of failure to mitigate "obviated" by plaintiff's election to seek only statutory damages).

### 4.   **Fourth Defense**

In his Fourth Defense, Weaver argues that Malibu Media's claim for statutory damages is barred by the Due Process Clause of the Fifth Amendment to the United States Constitution. (Doc. # 27 at 8-9). In particular, Weaver

asserts that, "[i]f all of Plaintiff's settlements for infringement of the works in question are added together, the damages likely exceed beyond the statutory maximum allowed by the copyright statute." (Id. at ¶ 42).

The Copyright Act provides a plaintiff with the option to elect an award of statutory damages "for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). "[D]amages awarded pursuant to a statute violate due process only if they are 'so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable.'" Capitol Records, Inc. v. Thomas-Rasset, 692 F.3d 899, 907 (8th Cir. 2012) (quoting St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63, 67 (1919)); see also Sony BMG Music Entm't v. Tenenbaum, 719 F.3d 67, 70-71 (1st Cir. 2013) (applying same standard).

At this stage of the proceedings, any determination as to the constitutionality of the amount of a statutory-damages award would be based on speculation. To be sure, Malibu Media has not yet been awarded any statutory damages, nor has Weaver's liability been determined. The Court will consider the constitutionality of any statutory-damages award if and

when the issue becomes ripe. Accordingly, Malibu Media's Motion is denied with respect to Weaver's Fourth Defense.

### 5. **Fifth Defense**

Weaver asserts "Failure to Join an Indispensible Party" as his Fifth Defense. Weaver argues Malibu Media failed "to join the indispensable party" and so the Amended Complaint should be dismissed. (Doc. # 27 at ¶ 43). In relevant part, Rule 19 provides, "[a] person . . . whose joiner will not deprive the court of subject-matter jurisdiction must be joined as a party if . . .[,] in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1).

Malibu Media is suing one person in this action for alleged copyright infringement: Weaver. Although peers using BitTorrent must interact by sharing files to download those files, "[c]opyright infringement is a tort and it is well-settled that joint tortfeasors . . . 'are neither necessary parties under Rule 19(a) nor indispensable parties under Rule 19(b).'" Malibu Media, LLC v. Tsanko, No. 12-3899(MAS)(LHG), 2013 WL 6230482, at *8 (D. N.J. Nov. 30 2013) (quoting Malibu Media, LLC v. John Doe 1, No. 12-2078, 2013 WL 30648, at *10 (E.D. Pa. Jan. 3, 2013)). Thus, "[t]he Court will be able to adjudicate this matter and accord complete relief . . .

22

regardless of whether any other allegedly infringing members [of the swarm] are present." Malibu Media, LLC v. Doe, No. RWT 13-cv-0512, 2015 WL 1402286, at *3 (D. Md. Mar. 25, 2015).

In short, Weaver's Fifth Defense is "debunked by well-settled interpretations of Rule 19(a)." Malibu Media v. Batz, No. 12-cv-1953, 2013 WL 2120412, *4 (D. Colo. Apr. 5, 2013); see also Malibu Media, LLC v. Doe, No. 1:13-CV-30, 2013 WL 4048513, at *3 (N.D. Ind. Aug. 9, 2013) (striking non-joinder defense as "debunked"). Therefore, the Court grants Malibu Media's Motion with respect to Weaver's Fifth Defense. See Fitzpatrick, 2013 WL 5674711, at *5 (granting summary judgment in favor of Malibu Media as to defendant's non-joinder defense).

### 6. Sixth Defense

Weaver's Sixth Defense asserts immunity under the Communication Decency Act, 47 U.S.C. § 230. But, the Communication Decency Act is inapplicable to copyright infringement actions. See 47 U.S.C. § 230(e)(2) (stating, "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property"); Universal Commc'n Sys., Inc. v. Lycos, Inc., 478 F.3d 413, 422-23 (1st Cir. 2007) (stating, "[c]laims based on intellectual property laws are not subject to Section 230

immunity"); Atl. Recording Corp. v. Project Playlist, Inc., 603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009) (stating, "as a matter of law, that Section 230(c)(1) does not provide immunity for either federal or state intellectual property claims"). Therefore, Malibu Media is entitled to summary judgment as to Weaver's Sixth Defense.

### 7.   **Seventh Defense**

Weaver's Seventh Defense of "License, Consent, and Acquiescence" is actually three affirmative defenses. "An implied license is created when one party (1) creates a work at another person's request; (2) delivers the work to that person; and (3) intends that the person copy and distribute the work." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1235 (11th Cir. 2010). As to consent, "[w]aiver or abandonment of copyright occurs only if there is an intent by the copyright proprietor to surrender rights in his work." Malibu Media, LLC v. Zumbo, No. 2:13-cv-729-JES-DNF, 2014 WL 2742830, at *2 (M.D. Fla. June 17, 2014) (citation and internal quotation marks omitted). Regarding acquiescence, a defendant must establish that "(1) Plaintiff actively represented that [it] would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the [D]efendant

24

undue prejudice." <u>Thornton v. J Jargon Co.</u>, 580 F. Supp. 2d 1261, 1283 (M.D. Fla. 2008) (citation omitted).

Weaver has not submitted any evidence supporting these three affirmative defenses. As such, Weaver failed to carry his burden and summary judgment in favor of Malibu Media is appropriate with respect to each component of the Seventh Defense.

### 8.   Eighth Defense

Furthermore, Malibu Media is entitled to summary judgment as to Weaver's Eighth Defense of "Unclean Hands." "To prevail on the defense of unclean hands, Defendant[] must demonstrate that: (1) Plaintiff's alleged wrongdoing is directly related to the claim against which it is asserted; and (2) Defendant[] [was] personally injured by Plaintiff's conduct." <u>Id.</u> (citing <u>Calloway v. Partners Nat'l Health Plans</u>, 986 F.2d 446, 450-51 (11th Cir. 1993)). Weaver has presented no evidence in support of this affirmative defense and, therefore, has failed to carry his burden. Accordingly, summary judgment in favor of Malibu Media is appropriate as to the Eighth Defense.

### 9.   Ninth Defense

Weaver's Ninth Defense is no defense at all; rather, it is a denial of Malibu Media's entitlement to relief. (Doc. #

25

27 at ¶ 47) (stating, "Plaintiff is not entitled to injunctive relief because any alleged injury to Plaintiff is not immediate nor is it irreparable"). "[W]hen a specific denial is labeled as an affirmative defense, a court will generally treat the defense as a denial . . . ." <u>Royal Caribbean Cruises, Ltd. v. Jackson</u>, 921 F. Supp. 2d 1366, 1372 (S.D. Fla. 2013). Even though Weaver's Ninth Defense is mislabeled, in light of the genuine issue of material fact regarding whether Weaver downloaded the 31 films at issue, the Court denies Malibu Media's Motion as the Ninth Defense.

**IV. Conclusion**

In sum, Malibu Media's Motion is granted in part and denied in part. In particular, Malibu Media's Motion is denied as to Count I of the Amended Complaint because a genuine issue of material fact exists with respect to whether Weaver downloaded the 31 films at issue in this action. Furthermore, Malibu Media's Motion is denied as to Weaver's First, Second, Fourth, and Ninth Defenses, but granted as to the Third, Fifth, Sixth, Seventh, and Eighth Defenses. Weaver's Motion, which seeks summary judgment as to Count I of the Amended Complaint only, is denied because Malibu Media has presented sufficient evidence to create a genuine issue of fact.

Accordingly, it is

26

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Plaintiff Malibu Media's Motion for Summary Judgment (Doc. # 74) is **GRANTED IN PART AND DENIED IN PART**, as detailed herein.

(2)   Defendant Gregory Weaver's Motion for Summary Judgment (Doc. # 98) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 8th day of April, 2016.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE